UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEBORAH ANN SWANSON,

                Plaintiff,

v.                                                                                **DECISION AND ORDER**
                                                                                              12-CV-645S
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.

    1.     Plaintiff Deborah Swanson challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

    2.     Swanson filed an application for Disability Insurance benefits ("DIB") under Title II of the Act on November 23, 2009. Therein, she alleged an inability to work as of August 21, 2009 due to a shoulder replacement, back injuries, and depression. (R. 139.)[2] The application was denied and, at Swanson's request, a video hearing was held before Administrative Law Roxanne Fuller on August 29, 2011. Swanson appeared with an attorney and testified. The ALJ considered the case *de novo*, and on October 6, 2011, issued a decision denying the application for benefits. Swanson filed a request for review with the Appeals Council, which denied the request on May 8, 2012. She commenced this

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action, under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the administrative record are designated as "R."

civil action on July 9, 2012, challenging the Commissioner's final decision.[3]

3.  Swanson filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on January 7, 2013. The Commissioner filed his motion for judgment on the pleadings on March 25, 2013. The motions were fully briefed on April 24, 2013, at which time this Court took the matter under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is denied, Swanson's motion is granted in part and denied in part, and the ALJ's decision is remanded to the Commissioner for further proceedings.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[3] The ALJ's May 26, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, Swanson underwent a shoulder replacement to treat degenerative joint disease in February 2006, was involved in a motor vehicle accident in May 2006, and another in July 2006, and has had multiple surgeries for bunions and hammertoes. The ALJ made the following findings with regard to the five-step process: (1) Swanson had not engaged in substantial gainful activity since August 21, 2009 (R. 15); (2) the degenerative changes of her left shoulder, lumbar radiculopathy, herniated cervical disc, hammertoes of the left foot, and depression are severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 16); (4) Swanson retains the residual functional capacity ("RFC") to perform sedentary work with several

specified limitations[4] (R. 18); (5) she is unable to perform her past relevant work (R. 22); and (6) jobs exist in substantial number in the national economy that an individual of Swanson's age, education, past relevant experience, and RFC can perform (R. 23.) Ultimately, the ALJ concluded that Swanson was not under a disability as defined by the Act. (Id.)

10. Swanson maintains the ALJ: (1) erroneously failed to find that her bilateral arm/wrist nerve disorders were a severe impairment, (2) did not apply the appropriate legal standard in determining her RFC, (3) did not properly assess her credibility, and (4) did not meet the Commissioner's burden of proof at step five of the sequential process.

11. "A 'severe' impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. Tryon v. Astrue, No. 10-CV-537, 2012 U.S. Dist. LEXIS 14486, at *5 (N.D.N.Y. Feb. 7, 2012) (citations omitted). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," and include, *inter alia*, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521(b)(1). At step two, Swanson has the burden of establishing severity. "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." McConnell v. Astrue, 03-CV-052, 2008 U.S. Dist. LEXIS 24638, at *6 (N.D.N.Y. Mar. 27, 2008) (citing Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995)). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight

---

[4] The ALJ determined that Swanson had the residual functional capacity to perform sedentary work, except for frequent push or pull with the left arm; frequent push, pull, or foot control operation with the left foot, never climb ramps, stairs, ladders, ropes, or scaffolds, never balance, occasional stoop, crouch, kneel and crawl, frequent reaching with left arm, frequent gross and fine manipulation with the left (non-dominant) hand, and no use of moving machinery. In addition the ALJ found Swanson could remember and carry out one- to two-step instructions, and perform simple, routine, repetitive tasks. (R. 18.)

abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 U.S. Dist. LEXIS 5621 (E.D.N.Y. March 19,1999) (quoting Social Security Ruling 85-28).

As noted above, ALJ Fuller's step two finding identified five severe impairments. The ALJ proceeded to discuss two other alleged conditions, but found no medical evidence on record to support the existence of significantly limiting impairments. She did not discuss, or make any step two findings with regard to, Swanson's alleged bilateral nerve disorders.

Swanson first reported experiencing numbness and tingling in her index, long middle, and small fingers bilaterally after her first car accident, in June 2006. (R. 247.) She did not experience any clumsiness of the hands, and she continued to work. (Id.) In July 2008, Swanson reported increasing pain in her neck associated with some numbness. (R. 273.) Her physician, Dr. Huckell, ordered an EMG study which suggested a peripheral nerve problem, but Swanson reported, on October 7, 2008, that physical therapy had helped reduce the numbness in her hands. (R. 291.) She continued to work full-time. (R. 292.)

After Swanson ceased working, she reported, on October 8, 2009, that she experienced intermittent numbness and tingling of the left upper extremity, and increased clumsiness to the hands. (R. 243.) On March 10, 2010, Swanson was seen by consultative physician, Dr. Kathleen Kelley, for an orthopedic examination. Swanson, who is right-hand dominant, reported occasional sharp pain down the right arm into the right fingers. (R. 339.) Dr. Kelley found she had full range of motion of the *right* shoulder, and of the elbows, forearms, wrists, and fingers *bilaterally*. Her hand and finger dexterity were intact. (R. 341.) On April 7, 2010, Swanson told Dr. Huckell she continued to experience numbness and tingling of the left upper extremity, and increased clumsiness to the hands. (R. 415.) She

6

made no mention of right arm or hand pain, and Dr. Huckell noted full range of motion bilaterally in her shoulders, elbows, and wrists. (R. 415-16.) On July 20, 2011, Swanson advised another of her treating sources, Dr. Bansal, that she had begun experiencing a shooting pain to her right hand about two weeks prior. (R. 490.) Two weeks later, at the administrative hearing, Swanson testified to tingling in her left hand only. (R. 39.) She stated that Dr. Falcone, who had performed her left shoulder replacement surgery in 2006, recently had her tested for carpal tunnel syndrome due to shooting tingling she was experiencing in her left hand. (R. 37-39.) The ALJ left the record open for fourteen days so those test results could be included. (R. 40-41.) The objective measurement of Swanson's nerve function revealed moderate left median neuropathy at the wrist, mild right median neuropathy at the wrist, and left ulner neuropathy at the elbow. (R. 519.)

Swanson contends she suffers from a nerve disorder that limits her manipulative abilities and manual dexterity. When seen by various physicians, she reported intermittent numbness and occasional pain, yet no treating or consultative physician made an objective finding that the function of her hands and fingers were limited, much less that the loss of function was such that it limited her ability to perform basic work activities. To the contrary, Drs. Huckell and Kelley observed full range of wrist motion *bilaterally*, and Dr. Kelley found her manual dexterity intact. Clinical test results from 2011 characterize her neuropathy as *mild* on the right. While the ALJ included the well-documented degenerative changes in Swanson's *left* shoulder among her severe impairments, on this record, the ALJ's failure to find that Swanson had a severe *bilateral* nerve disorder does not constitute reversible error.

  12. Next, Swanson challenges the ALJ's determination that she has the residual

functional capacity to perform sedentary work. She first argues that the ALJ failed to fully develop the administrative record when she did not request RFC assessments from treating physicians Huckell and Falcone,[5] both of whom opined that Swanson was unable to work at all. It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); McClaney v. Astrue, 2012 U.S. Dist. LEXIS 123756, at *28-29 (E.D.N.Y. Aug. 10, 2012). Social Security Administration regulations provide that:

> [m]edical reports should include . . . [a] statement about what you can still do despite your impairment(s) . . . . Although *we will request a medical source statement* about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete.

20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6) [emphasis added].

Recently, the Second Circuit Court of Appeals rejected a claimant's contention that an ALJ's failure to request an RFC assessment from a treating physician necessarily or automatically requires a remand. Tankisi v. Commissioner of Social Security, No. 12-1398-CV, 2013 U.S. App. LEXIS 6545, 2013 WL 1296489 (2d Cir. Apr. 2, 2013). While the Circuit Court acknowledged that the plain text of the regulations is neither conditional nor hortatory and "seems to impose on the ALJ a duty to solicit . . . medical opinions," it went on to reason as follows:

> [T]he text indicates that "[m]edical reports *should* include . . . [a] statement about what you can still do despite your impairment," not that they *must*

---

[5] Dr. Falcone's statement relative to disability appears in a report submitted to the Appeals Council, *after* ALJ had issued a decision in this case. Thus, there is no arguable basis for a finding of error with respect to Dr. Falcone.

> include such statements. Id. (emphasis added). It also indicates that "the lack of the medical source statement will not make the report incomplete." Id. Other regulations also state that a case record "may contain medical opinions." See, e.g., 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added). These provisions indicate that the ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused. Taken more broadly, they suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity. See Moser v. Barnhart, 89 F. App'x 347, 348 (3d Cir.2004); Scherschel v. Barnhart, 72 F. App'x 628, 630 (9th Cir.2003); Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995).

Id. at *11-12.[6]

This case is readily distinguished from the circumstances in Tankisi. While the administrative record in that case did not contain "formal opinions" from treating physicians, a treating source had otherwise assessed Tankisi's limitations. Id. at *12. Similarly, in the only district court decision to apply Tankisi's reasoning to date, the ALJ had given the plaintiff's counsel an opportunity, following the hearing, to submit an RFC assessment from a treating nurse practitioner. Kunkel v. Comm'r of Soc. Sec., 12-CV-6478CJS, 2013 U.S. Dist. LEXIS 117911, at *38 (W.D.N.Y. Aug. 20, 2013). In concluding that the ALJ's failure to request an assessment from a particular physician did not require remand, the district court noted that the ALJ's RFC was substantially in accord with the assessment provided by the nurse practitioner, and both the physician in question and the nurse practitioner had treated the plaintiff at the same clinic. Id. at *50-53. Here, in contrast, the record contains

---

[6] Just days prior to the Tankisi decision, this Court remanded a Social Security case on the ground the regulations require that, for a record to be complete, an ALJ must *request* an opinion from the claimant's treating physician. The record will not be deemed defective if the physician doesn't comply; what is necessary is that the ALJ *attempt to obtain* opinion evidence. Martello v. Astrue, 12-CV-215S, 2013 U.S. Dist. LEXIS 46574 (W.D.N.Y. Mar. 29, 2013). Tankisi now requires that, where the ALJ fails in his clearly-defined duty, I must not remand on that basis alone, but must first determine whether the record contains sufficient evidence from which an ALJ can assess residual functional capacity.

9

no formal or informal RFC assessment by a treating source.

The question of whether "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity" necessarily dovetails with the "treating physician rule," which mandates that the opinion of a claimant's treating physician "regarding the nature and severity of [the claimant's] impairments" be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Here, Dr. Huckell stated in office treatment notes that Swanson is "permanently disabled." ALJ Fuller characterized this notation as "opinion" and afforded it no weight because "it goes to the ultimate issue, which is reserved to the commission," rather than to the nature and severity of her impairments. (R. 21.)

It previously has been noted in this district that "it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits." Ubiles v. Astrue, No. 11-CV-6340, 2012 U.S. Dist. LEXIS 100826, at *24 (W.D.N.Y. July 2, 2012) (holding remand was required where ALJ found treating physician's office notes stating plaintiff was "presently disabled" were vague and non-specific, but made no attempt to seek clarification or request an assessment of plaintiffs physical limitations). There is no evidence that ALJ Fuller attempted to obtain the information necessary to properly apply the treating physician's rule. Absent a reasonable explanation for the failure to obtain an RFC assessment from any treating source, the Court cannot conclude the ALJ fulfilled her affirmative duty to develop the record. Accordingly, the matter will be remanded. Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (failure to satisfy treating physician rule constitutes legal error, and

"ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence").

13. Swanson also contends the RFC assessment is flawed because ALJ Fuller did not assess her work-related abilities on a function-by-function basis. Social Security Ruling 96-8p states that "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." 1996 SSR LEXIS 5, at *2. The ruling further provides that, prior to assessing a claimant's residual functional capacity, "[e]ach function must be considered separately." *Id*.

The Second Circuit has confirmed, however, that an ALJ need not separately discuss a claimant's ability to perform each exertional function, so long as the RFC determination is set forth with sufficient specificity to permit the court to decide whether it is supported by substantial evidence. Campbell v. Astrue, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (summary order) (*citing* Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)); *see also*, Murphy v. Astrue, No. 12-CV-6271MAT, 2013 U.S. Dist. LEXIS 51088, at *16-18 (W.D.N.Y. Apr. 9, 2013); Lloyd v. Astrue, No. 12-CV-122S, 2013 U.S. Dist. LEXIS 25794, at *10 (W.D.N.Y. Feb. 23, 2013) (failure of ALJ to conduct function-by-function assessment is not *ipso facto* ground for remand). Because it already has been determined that further development of the record is required before such a determination can be made here, there is no need to address this argument.

14. Next, Swanson urges that ALJ Fuller did not apply the appropriate legal standards in assessing her credibility. The ALJ found that Swanson's medically

11

determinable impairments could reasonably be expected to cause left shoulder pain, left hand pain, and foot pain, but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (R. 19.) Because the Court already has concluded there is a basis for ordering remand, there is no need to address other alleged errors. The Court will discuss this issue briefly, however, so that Swanson's credibility may be properly assessed on remand.

Social Security Ruling 96-7p requires that, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 SSR LEXIS 4, at *2-3. "The determination . . . must contain specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight. Id. at *3-4.

Here, the ALJ did not identify any behavior or factors detracting from Swanson's credibility, such as evasiveness at the hearing or inconsistent statements. And, although the ALJ proceeded to summarize the record, she did not identify any evidence therein as the basis for her credibility finding. "It is erroneous for an ALJ to find a claimant's statements not fully credible [simply] because those statements are inconsistent with the ALJ's own RFC finding." Ubiles, 2012 U.S. Dist. LEXIS 100826, at *36 (citing, inter alia, Nelson v. Astrue, No. 09-CV-00909, 2010 U.S. Dist. LEXIS 90689, 2010 WL 3522304, at

*6 (N.D.N.Y. Aug. 12, 2010) (recommending remand for a proper analysis of Plaintiff's credibility on the ground that "the propriety of the ALJ's finding that Plaintiff was credible only to the extent that her statements were consistent with his own RFC determination is questionable"), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 90686, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010)). Thus, the ALJ erred by failing to evaluate all of the required factors bearing on Swanson's credibility before determining her RFC.

16.     Finally, Swanson contends the Commissioner did not meet his burden of proof at step five of the sequential evaluation because the ALJ incorporated an erroneous RFC determination into the hypothetical she presented to the vocational expert. Because the step four determination may change on remand, there is no need to consider this further alleged error.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED in part and DENIED in part;

FURTHER, that the decision of the ALJ is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: October 15, 2013
       Buffalo, New York

                                             /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             Chief Judge
                                             United States District Court